UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| SCOTT A. BADGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 2:15-cv-00392-JMS-MJD |
| | ) |
| CAROLYN W. COLVIN Acting Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

### ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Scott A. Badger applied for disability benefits from the Social Security Administration ("SSA") on November 28, 2012, alleging a disability onset date of October 5, 2012. [Filing No. 13-2 at 20.] His application was denied initially on March 8, 2013, and on reconsideration on May 16, 2013. [Filing No. 13-2 at 20.] A hearing was held on June 12, 2014, before Administrative Law Judge ("ALJ") William Spalo who issued a decision on July 18, 2014, determining that Mr. Badger was not disabled and not entitled to receive disability benefits. [Filing No. 13-2 at 20; Filing No. 13-2 at 33.] The Appeals Council denied review on October 21, 2015, [Filing No. 15 at 2], making the ALJ's decision the Commissioner's "final decision" subject to judicial review, *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). Mr. Badger filed this action pursuant to 42 U.S.C. § 405(g), asking this Court to review his denial of disability benefits. [Filing No. 1.]

### I.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381

1

F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong[,]" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [her] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. See 20 C.F.R. § 416.920(e), (g). The

burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Mr. Badger was fifty years old when he applied for disability benefits. [Filing No. 13-2 at 20; Filing No. 13-5 at 3.] He has a high school education. [Filing No. 13-2 at 46.] He previously worked as a welder and stopped in October 2012 when the plant where he worked closed down. [Filing No. 13-2 at 47.] At that job, Mr. Badger worked with argon gas and welded tanks. [Filing No. 13-2 at 47.]

Mr. Badger alleges that he has been disabled since October 5, 2012, [Filing No. 13-2 at 20], due to back, hip, leg, foot pain, and depression.[1] [Filing No. 13-2 at 50-52; Filing No. 15 at 3-7.] Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520, the ALJ issued a decision on July 18, 2014, [Filing No. 13-2 at 20-33], finding as follows:

---

[1] Mr. Badger detailed pertinent facts in his opening brief, [Filing No. 15 at 3-7], which the Commissioner does not materially dispute. Because those facts implicate sensitive and otherwise confidential medical information concerning medical information concerning Mr. Badger, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as necessary to address the parties' arguments.

3

- At Step One, the ALJ found that Mr. Badger has not engaged in substantial gainful activity[2] since October 5, 2012, the alleged onset date. [Filing No. 13-2 at 22.]

- At Step Two, the ALJ found that Mr. Badger suffered from the following severe impairments: "lumbar spine degenerative disc disease, left shoulder peritendinitis, obesity, and hernia, status post recent surgery." [Filing No. 13-2 at 22.]

- At Step Three, the ALJ found that Mr. Badger did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [Filing No. 13-2 at 26.]

- The ALJ concluded that Mr. Badger had the residual functional capacity ("RFC") to:

  > Lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about 6 hours of an 8-hour workday, and sit for at least 6 hours of an 8-hour workday. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. The claimant must avoid concentrated exposure to extreme heat, wetness, and humidity. The claimant must avoid concentrated exposure to pulmonary irritants (fumes, odors, dust, and gases) and poorly ventilated areas. The claimant must avoid even moderate exposure to frequent vibration, dangerous machinery, and unprotected heights.

  [Filing No. 13-2 at 27.]

- At Step Four, the ALJ found that Mr. Badger was unable to perform any past relevant work. [Filing No. 13-2 at 31.]

- At Step Five of the analysis, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Mr. Badger could perform, such as hand packer, assembler, and sorter. [Filing No. 13-2 at 32.]

---

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized.) 20 C.F.R. § 404.1572(a) and § 416.972(a).

- Based on these findings, the ALJ concluded that Mr. Badger is not disabled as defined by the Social Security Act and, thus, is not entitled to disability benefits. [Filing No. 13-2 at 32.]

Mr. Badger requested that the Appeals Council review the ALJ's decision, but that request was denied on October 21, 2015. [Filing No. 13-2 at 2.] That decision is the final decision of the Commissioner for purposes of judicial review, and Mr. Badger now seeks relief from this Court. [Filing No. 1.]

### III.
### DISCUSSION

Mr. Badger argues that the ALJ's decision concluding that he is not disabled must be reversed. First, Mr. Badger contends that the ALJ erred by not finding his mental impairments to be severe at Step Two. [Filing No. 15 at 8-9.] Second, Mr. Badger argues that the ALJ improperly evaluated opinion evidence pursuant to 20 C.F.R. 404.1527 with regard to the opinion of consultative examiner Dr. Stanley Hogsett. [Filing No. 15 at 10-11.] Third, although not developed as a separate issue in his brief, Mr. Badger argues within the context of his other arguments that the ALJ erred when assigning his RFC by not accounting for recognized functional limitations from his mental impairments. [Filing No. 15 at 9; Filing No. 15 at 11.]

**A. Step Two Challenge**

Mr. Badger argues that the ALJ erred by not finding his mental impairments to be severe at Step Two. [Filing No. 15 at 8-9.] To support his argument, he points to the exam results of consultative examiner Dr. Hogsett, which he contends show his difficulty with maintaining attention and concentration. [Filing No. 15 at 9.] Mr. Badger concludes that "because the ALJ assessed no severe mental impairments, no corresponding limitations were assessed in Plaintiff's determined residual functional capacity." [Filing No. 15 at 9.]

5

In response, the Commissioner emphasizes that an impairment or combination of impairments is not severe when the medical evidence establishes only a slight abnormality that would have no more than a minimal effect on a claimant's physical or mental ability to perform basic work." [Filing No. 18 at 8.] The Commissioner emphasizes that the ALJ acknowledged Mr. Badger's depression and anxiety but noted that his condition was mostly stable on medication, that he continued to work for two years following the death of his daughter, and that he only stopped working because the plant where he worked closed. [Filing No. 18 at 9-10.]

In reply, Mr. Badger argues that the ALJ's determination that he did not have an impairment or a combination of impairments that met or medically equaled any listed impairments contains error of law and fact and is not supported by substantial evidence. [Filing No. 19 at 1.] Mr. Badger claims that the ALJ "should have determined that mood disorder from anxiety and depression was a serious impairment resulting in more than minimal limitations in Mr. Badger's ability to function in a work setting." [Filing No. 19 at 2.]

A severe impairment is an impairment or combination of impairments that "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c). The ALJ is required to determine at Step Two whether the claimant has an impairment or combination of impairments that is severe. *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). The burden is on the claimant to prove that the impairment is severe. *Castile*, 617 F.3d at 926. As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process. *Id*. at 927 (citing 20 C.F.R. § 404.1523). If an ALJ finds one or more of a claimant's impairments to be severe, he needs to "consider the aggregate effect of the entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918

(7th Cir.2003). "Therefore, the step two determination of severity is merely a threshold requirement." *Castile*, 617 F.3d at 927.

The Court rejects Mr. Badger's Step Two challenge because the ALJ found Mr. Badger to have multiple severe impairments. [Filing No. 13-2 at 22.] Although the ALJ did not find his mental impairments to be severe, this "this particular determination is of no consequence with respect to the outcome of the case" because the ALJ proceeded remaining steps of the evaluation process. *Castile*, 617 F.3d at 927; [Filing No. 13-2 at 26-32]. To the extent that Mr. Badger argues that the ALJ erred when assigning his RFC by not accounting for recognized functional limitations from his mental impairments, [Filing No. 15 at 9; Filing No. 15 at 11], the Court will address that as a separate argument.

### B. Physician's Opinion

Mr. Badger argues that the ALJ improperly gave little weight to the opinion of consultative examiner Dr. Hogsett because of alleged inconsistencies in his opinion. [Filing No. 15 at 10-11.] Mr. Badger emphasizes that Dr. Hogsett assigned him a GAF score of 48, which is consistent with the GAF score assigned by another doctor that evaluated Mr. Badger. [Filing No. 15 at 10 (citing Filing No. 13-9 at 67 (report of Dr. Parvaz assigning Mr. Badger GAF score of 50)).]

In response, the Commissioner argues that the ALJ thoroughly discussed the clinical findings from Dr. Hogsett in the opinion. [Filing No. 18 at 11-12.] The Commissioner contends that the ALJ "acknowledged Dr. Hogsett's GAF rating of 48, but found that it was inconsistent with Dr. Hogsett's own objective findings and other evidence, such as the fact plaintiff's condition was controlled and his medications were effective." [Filing No. 18 at 11.] Further, the Commissioner points out that the ALJ contrasted Dr. Hogsett's findings with the findings of other

7

doctors and Mr. Badger's failure to regularly pursue mental health treatment. [Filing No. 18 at 11-12.]

In reply, Mr. Badger argues that he does not exclusively rely on the GAF score that Dr. Hogsett assigned him, but that it is consistent with other medical evidence of his moderate mental impairments. [Filing No. 19 at 2.] He contends that his treatment with a primary care physician should not be discounted just because that physician did not specialize in mental health treatment. [Filing no. 19 at 2.]

Medical opinions are statements from physicians or other acceptable medical sources "that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). An ALJ should "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]" because of his greater familiarity with the claimant's conditions and circumstances. *Minnick v. Colvin*, 775 F.3d 929, 937-38 (7th Cir. 2015) (citing 20 C.F.R. § 404.1527(c)(1)). The ALJ need not assign controlling weight to the opinion of a nontreating source who examined the claimant but does not have an ongoing treatment relationship with the claimant. *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005); *see also* 20 C.F.R. § 404.1502 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]."). "Instead, an ALJ is required to determine the weight a nontreating physician's opinion deserves by examining how well [he] supported and explained his opinion, whether his opinion is consistent with the record, whether [he] is a specialist ... and any other factor of which the ALJ is aware." *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009).

The Court finds that the ALJ did not err by concluding that the opinion of nontreating consultative examiner Dr. Hogsett was entitled to "little weight." [Filing No. 13-2 at 25.] As support for his argument that Dr. Hogsett's opinion should have received greater weight, Mr. Badger points to the GAF score that Dr. Hogsett assigned him, the fact that another doctor assigned him a similar GAF score, Dr. Hogsett's comment that Mr. Badger's "ability to complete tasks at the time would probably be very difficult for him as his attention and concentration is difficult for him to maintain," and a medical source statement from a graduate student. [Filing No. 15 at 10.]

It is well-established that a GAF score "does not reflect the clinician's opinion of functional capacity." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). This is because while a GAF score is "useful for planning treatment," it always reflects the worse of either severity of symptoms or functional level. *Id.* Thus, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Id.* Given this well-established law, the fact that Mr. Badger had two physicians assign him GAF scores around 50 does not require reversal of the ALJ's opinion.

As for Dr. Hogsett's equivocal comment that Mr. Badger "would probably" have difficulty completing tasks, the Court finds that it was not reversible error for the ALJ to assign Dr. Hogsett's opinion little weight because the ALJ specifically identified Dr. Hogsett's inconsistencies with that comment—namely, that he noted that Mr. Badger was able to participate in an hour-long evaluation, was cooperative, and that his responses to questions were appropriate. [Filing No. 13-2 at 25 (citing Filing No. 13-7 at 70-74).] Given that Dr. Hogsett was a nontreating physician who examined Mr. Badger once and the ALJ specifically pointed to internal inconsistencies in his report, the Court finds that the ALJ sufficiently articulated his rationale for giving Dr. Hogsett's opinion little weight. *White*, 415 F.3d at 658. This is also true with regard to a graduate student's

report Mr. Badger cites as support for Dr. Hogsett's position, [Filing No. 13-10 at 57-59], since the ALJ noted the student had an "unclear" role in Mr. Badger's treatment, [Filing No. 13-2 at 25]. Additionally, the applicable regulations do not make clear whether a graduate student is an "acceptable medical source" for purposes of establishing an impairment. 20 C.F.R. § 416.913 (listing acceptable medical sources such as licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, licensed speech-language pathologists). Thus, the Court concludes that it was not reversible error for the ALJ to assign Dr. Hogsett's opinion little weight.

## C. RFC Challenge

Mr. Badger argues that the ALJ erred when crafting his RFC by not accounting for recognized functional limitations from his mental impairments. [Filing No. 15 at 9; Filing No. 15 at 11.] While Mr. Badger certainly could have more fully developed this argument, the Court finds that he did raise it in his opening brief and that the Court should address it in the interest of justice.

In assessing whether Mr. Badger had any severe impairments for purposes of Step Two, the ALJ thoroughly examined the evidence of Mr. Badger's mental impairments and any accompanying functional limitations. [Filing No. 13-2 at 23-25.] The ALJ ultimately concluded that Mr. Badger's mental limitations were nonsevere based on the evidence he analyzed, the weights he gave to various physician opinions, and because Mr. Badger's condition "is controlled and his medications are effective." [Filing No. 13-2 at 25.] While the ALJ's conclusion regarding the nonseverity of Mr. Badger's mental impairments for purposes of Step 2 is not necessarily erroneous, the Court is troubled by the ALJ's recognition of certain mild limitations Mr. Badger had and his failure to account for those when crafting Mr. Badger's RFC. Specifically, the ALJ afforded substantial weight to the opinion of Dr. Kari Kennedy, who he acknowledges assigned Mr. Badger "mild limitations" because of his depression. [Filing No. 13-2 at 25.] Dr. Kennedy's

report confirms that when assessing the "B criteria" of various mental impairment listings, she concluded that Mr. Badger had mild difficulties in maintaining social functioning, maintaining concentration, persistence or pace, and in activities of daily living. [Filing No. 13-3 at 6.] After discussing all of the evidence of Mr. Badger's mental impairments and concluding that they did not present a severe impairment, the ALJ noted that although his mental limitations may not be severe for purposes of Step 2,

> [t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorder listings . . . . Therefore, the following residual functional capacity assessment reflects the degree of limitations I have found in the "paragraph B" mental function analysis.

[Filing No. 13-2 at 25-26.]

Despite the ALJ's foreshadowed inclusion of some functional limitations from Mr. Badger's mental impairments in the RFC, as Mr. Badger points out, it is beyond dispute that the RFC contains no functional limitations for Mr. Badger's recognized mild mental impairments. [Filing No. 13-2 at 27.] In fact, the ALJ did not discuss Mr. Badger's mental limitations at all in his lengthy discussion of the RFC. [Filing No. 13-2 at 27-31.] This requires the Court to reverse the ALJ's decision for two reasons. First, the ALJ failed to build a logical bridge from the evidence he credited of Mr. Badger's mild functional limitations from his mental impairments at Step Two to the RFC's failure to account for them. *See Villano*, 556 F.3d at 562 (emphasizing that the ALJ "must build a logical bridge from evidence to conclusion"). Second, it is well-established that when crafting an RFC, the ALJ must "consider the aggregate effect of [the] entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski*, 322 F.3d at 918 (concluding that "[o]n remand the agency must remember that a competent evaluation of [the claimant's disability] application depends on the total effect of all his medical problems"). In

other words, it does not matter that the ALJ found Mr. Badger's mental impairments to be nonsevere because the RFC still must account for functional limitations from nonsevere impairments. *See also Villano*, 556 F.3d at 563 ("In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling."). For these reasons, the Court must reverse the ALJ's denial of Mr. Badger's application for disability benefits.

## IV.
## CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Mr. Badger disability benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). On remand the ALJ must account for the mild limitations resulting from Mr. Badger's depression in his RFC determination. Final judgment shall issue accordingly

Date: June 27, 2016

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via CM/ECF:**

Thomas C. Newlin
FLESCHNER STARK TANOOS & NEWLIN
tom@fleschnerlaw.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov